UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| WILLIAM MASON, SR.,<br>BRIAN DIAS,<br><br>               Plaintiffs,<br><br>v.<br><br>UNIVERSITY AND COMMUNITY<br>COLLEGE SYSTEM OF NEVADA,<br>a Nevada public entity; UNIVERSITY OF<br>NEVADA, LAS VEGAS, a public<br>entity/institution; JOSE ELIQUE, in his<br>individual and official capacity;<br>MICHAEL MURRAY, in his individual<br>and official capacity;<br><br>               Defendants. | 2:02-CV-0801-PMP (PAL)<br><br><br>ORDER re SUMMARY JUDGMENT |

       This case arises out of the termination of Plaintiffs William Mason, Sr., and Brian Dias from employment with the Public Safety Department of the University of Nevada at Las Vegas. Plaintiffs commenced this action in Nevada State court in May 2002, and on June 6, 2002, the action was removed to this Court. Plaintiffs' Complaint asserts five claims against Defendants: (1) violations of 42 U.S.C. § 1983; (2) intentional or negligent infliction of emotional distress; (3) negligence; (4) negligent supervision; and (5) retaliation. (Compl. ¶¶ 14-37.)

       On January 13, 2004, this Court entered an Order (Doc. #39) granting Defendants' Motion for Summary Judgment and entering Judgment in favor of Defendants. Plaintiffs took a timely appeal, and on February 6, 2006, the United States Court of Appeals

for the Ninth Circuit filed an Opinion reversing this Court's Order of Summary Judgment on the basis of issue preclusion, and affirming this Court's grant of Summary Judgment and dismissal of the remaining claims under the doctrine of qualified immunity.  (Docs. #46 and #47.)  Dias v. Elique, 436 F.3d 1125 (9th Cir. 2006).

On August 23, 2006, Defendant University and Community College System of Nevada ("UCCSN") filed a Motion to Dismiss (Doc. #63) and on August 30, 2006, Defendant UCCSN filed a Motion for Leave to File Motion for Summary Judgment (Doc. #66).  On September 19, 2006, this Court entered an Order (Doc. #75) granting Defendant UCCSN's Motion to Dismiss Plaintiffs' Claim for Violation of 42 U.S.C. § 1983 (Count 1).  The Court exercised discretion to retain jurisdiction over Plaintiffs' remaining supplemental state law claims.  See 28 U.S.C. § 1367(c).  In the same Order (Doc. #75), the Court granted Defendants' Motion for Leave to File a Motion for Summary Judgment which has now been fully briefed by the parties (Docs. #76, #77 and #78).  On October 4, 2006, the Court conducted a hearing regarding Defendant's Motion for Summary Judgment (Doc. #79).

Given the lengthy history of this case, the Court considers it appropriate to summarize once again the factual background pertinent to the instant Motion for Summary Judgment.

**I.      FACTUAL BACKGROUND**

At the time of their termination from employment with the University of Nevada at Las Vegas ("UNLV") Public Safety Department, Dias was a University Police Sergeant and Mason was a University Police Officer II.  On September 10, 2001, Lieutenant Rochelle Sax reported to Defendant Michael Murray ("Murray"), Deputy Director of Public Safety, what she believed to be misconduct on Plaintiffs' part.  Sax suspected Plaintiffs were falsifying their time and attendance records by signing each other in and out of the department's log book.  The next day, Murray reported Sax's suspicions to Defendant Jose Elique ("Elique"), then Chief of Police at UNLV.  Murray noted that if Sax was correct,

then Plaintiffs were submitting false timesheets and being paid for hours they did not work. Murray gave Elique copies of pages out of the police log book which Sax provided along with her report. According to Murray, the log book showed possible discrepancies in the signatures and entries. Murray concluded Plaintiffs might have violated the law. Because he determined that Nevada Revised Statute 228.172 gives the Nevada Attorney General's Office primary jurisdiction to investigate and prosecute crimes committed by State employees in the course of their duties or arising out of circumstances related to their positions, he referred the matter to that office.

The Attorney General's Office investigated and prepared a report documenting the basis for criminal charges which were filed against Plaintiffs. In April 2002, UNLV placed Plaintiffs on paid administrative leave and provided them with formal written notification of the commencement of a UNLV police department internal disciplinary investigation

Plaintiffs filed the instant action in state court in May 2002. On June 6, 2002, Defendants removed the case to this Court. That same day, the Attorney General charged Plaintiffs with violating Nev. Rev. Stat. 197.160, presenting a fraudulent claim to a public officer, a gross misdemeanor. In August 2002, Plaintiffs attended a preliminary hearing and were bound over for trial.

Plaintiffs waived an informal predisciplinary hearing to contest their discharge, and UNLV terminated their employment as of July 1, 2002. Plaintiffs appealed their terminations to the State Department of Personnel. A State Personnel Commission hearing officer heard the case on November 5, 2002, at which Murray, Dias, Mason, and other officers from the UNLV police department testified.

Plaintiffs conceded the discrepancies in the log book, but denied any misconduct. Plaintiffs claimed that although they were not at work at the times claimed, they did not present false claims for money to which they were not entitled. According to Plaintiffs,

their absences compensated for other hours of work which they had not recorded because of budgetary constraints on overtime and compensatory time. They referred to this as taking "flex time."

The various witnesses at the hearing disagreed regarding the meaning of "flex time," whether it was a legal means of compensating employees for hours worked, and whether it was approved for patrol officers. According to Plaintiffs, flex time was a common and approved practice by which officers could be compensated for time spent doing non-shift work, such as training, without incurring overtime or compensatory time expenses. Murray testified that flex time was available only to certain employees and did not involve leaving work early. Rather, Murray defined flex time as moving an entire shift's start and end time. Murray also indicated flex time was not used for patrol officers because otherwise the department would not know who was on patrol at any given time.

The hearing officer found Plaintiffs repeatedly violated the department's time reporting requirements. The hearing officer also found the evidence established "willful misconduct," including endangering the security of the institution, inexcusable neglect of duty, dishonesty, unauthorized absence from duty or abuse of leave privileges, and falsification of records. The hearing officer thus concluded that "[i]n view of the substantial reliable and probative evidence of Employee misconduct, there is legal just cause for [terminating Plaintiffs] and it was within the employer[']s range of reasonable discipline and the good of the public service would be served thereby."

The hearing officer also rejected Plaintiffs' claims they were fired in retaliation for bringing suits against UNLV and its president. The hearing officer noted UNLV took no action against Plaintiffs until after the Attorney General filed criminal charges against them and found "no evidence of retaliation."

On July 8, 2003, Defendants moved for summary judgment on all counts, arguing res judicata and collateral estoppel barred Plaintiffs' claims, Defendants are not "persons"

under 42 U.S.C. § 1983, and Defendants are entitled to various immunities.  Plaintiffs responded that Defendants waived the res judicata defense and Defendants are not entitled to immunity.  This Court granted summary judgment in Defendants' favor on all claims. (Order [Doc. #39].)  The Court ruled the prior state administrative hearing officer's findings operated to preclude Plaintiffs' claims one through five to the extent they relied on a theory of wrongful termination based on false allegations and retaliation.  (Id.)  The Court also ruled Defendant UCCSN is not a person and thus not subject to liability under 42 U.S.C. § 1983, and Defendants Elique and Murray were entitled to qualified immunity regarding Plaintiffs' allegation that Elique and Murray violated Nevada Revised Statute 289.060.

Plaintiffs appealed and the United States Court of Appeals for the Ninth Circuit affirmed in part and reversed and remanded in part.  Dias v. Elique, 436 F.3d 1125 (9th Cir. 2006).  Specifically, the Ninth Circuit held that because the state administrative hearing proceeded under a different burden of proof than the burden of proof Plaintiff bore in this case, issue preclusion under Nevada state law did not apply.  Id. at 1128-31.  The Ninth Circuit affirmed this Court's grant of qualified immunity to individual Defendants Murray and Elique.  Id. at 1131-32.  The Ninth Circuit noted that this Court held, and the parties did not dispute on appeal, that UCCSN cannot be liable under § 1983 because it is not a "person" within § 1983's meaning.  Id. at 1131 n.5.

## II.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #76)

Defendant UCCSN argues that its Motion for Summary Judgment is warranted because it is entitled to immunity on all of Plaintiffs' claims under Nevada Revised Statute 41.032 for its employees' discretionary acts.  Additionally, Defendant argues Plaintiffs' intentional infliction of emotion distress claim fails because Defendant's conduct was not outrageous and Plaintiffs have failed to present any evidence of severe emotional distress. Defendant argues summary judgment is appropriate on Plaintiffs' negligent infliction of emotional distress claim because Plaintiffs have not established they suffered a physical

impact.  Further, Defendants argue Plaintiffs' negligent supervision claim fails because Plaintiffs have not produced evidence of a threat of physical harm and because Defendant did not fail to supervise Elique and Murray in filing charges against Plaintiffs.  Finally, Defendant argues no cause of action for retaliation exists because Plaintiffs are public employees whose lawsuits do not involve matters of public concern, and even if they did, Plaintiffs have failed to show their interests outweigh UCCSN's interests in maintaining an honest police force.

  Plaintiffs respond by again objecting to any consideration of Defendants' arguments at this stage of the proceedings.  Plaintiffs contend this Court addressed Plaintiffs' state law claims in the first Order on summary judgment and further consideration at this time is unwarranted.  On the merits, Plaintiffs argue immunity under 41.032 does not apply because Defendants acted in bad faith.  Plaintiffs also argue terminating police officers based on false accusations of stealing time and wages is outrageous conduct supporting Plaintiffs' infliction of emotional distress claims.  Plaintiffs object to Defendant's argument regarding whether Plaintiffs suffered extreme emotional distress because Defendant did not make that argument in its initial motion for summary judgment.  Plaintiffs contend that although they have presented no evidence of seeking medical assistance for their stress, they intend to testify at trial regarding their emotional distress.  Plaintiffs assert Defendant is liable for negligent supervision because Defendant failed to supervise Elique and Murray who retaliated against Plaintiffs by filing false allegations of misconduct against Plaintiffs.  Finally, Plaintiffs argue their retaliation claim should survive summary judgment because they engaged in protected activity by filing two lawsuits that challenged UNLV's treatment of public employees, which is a matter of public concern.  Plaintiffs argue their interests in access to the courts outweigh UCCSN's interests in this matter.

\\\

## III. ANALYSIS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law defines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

### A. Objection to the Motion

Plaintiff objects to the Court hearing this motion at this stage of the proceedings. Plaintiff argues this Court already has addressed Defendant's motion for summary judgment and Defendant should not be permitted another opportunity to pursue summary judgment.[1]

---

[1] At the hearing, Plaintiffs' counsel suggested the Court permitted the renewed summary judgment motion because the Court erroneously believed it did not address the state law claims in its first order on summary judgment. The Court addressed the state law claims in the initial order on summary judgment (Doc. #39). The Court ruled that a portion of Plaintiffs' federal section 1983 claim was barred by issue preclusion based on the state administrative hearing. The Court then stated: "Because Plaintiffs' state law claims rest on the same false allegation and retaliation theories, the Court will grant summary judgment in favor of Defendant on Counts 2, 3, 4, and 5." (Doc. #39 at 11.) In a footnote, the Court recounted Plaintiffs' arguments describing their state law claims to show that each one of them relied on the same false allegation/retaliation theory that was resolved in the state administrative hearing.

Accordingly, the Court resolved only one basis for summary judgment, issue preclusion, and did not address the other arguments Defendant raised in its first motion for summary judgment. The Ninth Circuit reversed on issue preclusion. In the Order granting leave to file a renewed motion for

Although this Court ruled on all of Plaintiffs' claims, the Court did so on the narrow basis that Plaintiffs' state law claims were barred by issue preclusion based on the state hearing officer's findings. The Court therefore did not address Defendant's other arguments as to why summary judgment on these claims was proper. The Ninth Circuit reversed this Court's ruling on issue preclusion. Accordingly, neither the Ninth Circuit nor this Court addressed Defendant's other summary judgment arguments, leaving Defendant without judicial resolution of its arguments.

### B. Immunity Under Nevada Revised Statute 41.032

The State of Nevada waived its sovereign immunity by enacting Nevada Revised Statute 41.031. Andolino v. State, 624 P.2d 7, 9 (Nev. 1981). The State's waiver of immunity, however, was not absolute; it elected to maintain immunity for discretionary acts. Id.; Nev. Rev. Stat. § 41.032 (stating, in relevant part, that no action may be brought against a state officer or employee which is "[b]ased upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions . . . whether or not the discretion involved is abused."). Acts are "discretionary" if they require personal deliberation, decision, and judgment. Bd. Of County Comm'rs v. Cirac, 639 P.2d 538, 539 (Nev. 1982). A state agency is not immune for acts that are "operational," meaning acts in which the state officer is obeying orders or performing a duty in which the officer is left no choice of his own. Id.

Nevada has recognized an exception to immunity for discretionary acts where the

---

summary judgment (Doc. #75), the Court stated: "The Court concludes permitting Defendant to file the motion best serves the interests of justice and the efficient use of judicial resources. Defendant raised these arguments in its initial motion for summary judgment but the Court did not address them because the Court found the issue preclusion argument persuasive. The Ninth Circuit reversed that decision, leaving Defendant without a judicial resolution of its other arguments." Thus, the Court will address the motion for summary judgment on any issue raised but not decided in the initial motion (Doc. #31 at 24-25), including the state discretionary immunity argument raised by Defendant in its initial motion.

state official acts in "bad faith," because a state official does not have discretion to act in bad faith and thus any act "committed or performed in bad faith cannot, by definition, be within the actor's discretion." Falline v. GNLV Corp., 823 P.2d 888, 891-92 (Nev. 1991) (bad faith denial of workers compensation benefits under state system not entitled to discretionary immunity). Nevada distinguishes between an instance of an abuse of discretion and bad faith as follows:

> [A]n abuse of discretion necessarily involves at least two factors: (1) the authority to exercise judgment or discretion in acting or refusing to act on a given matter; and (2) a lack of justification for the act or inaction decided upon. Bad faith, on the other hand, involves an implemented attitude that completely transcends the circumference of authority granted the individual or entity. In other words, an abuse of discretion occurs within the circumference of authority, and an act or omission of bad faith occurs outside the circumference of authority. Stated otherwise, an abuse of discretion is characterized by an application of unreasonable judgment to a decision that is within the actor's rightful prerogatives, whereas an act of bad faith has no relationship to a rightful prerogative even if the result is ostensibly within the actor's ambit of authority. For example, if an administrator decides to delay or deny a claimant's benefits because of a personal dislike for the claimant, the delay or denial would be attributable to an unauthorized act of bad faith despite the fact that a denial or delay could be otherwise among the rightful prerogatives of the administrator.

Id. at 892 n.3. A bad faith termination is not discretionary and therefore not subject to immunity. Wayment v. Holmes, 912 P.2d 816, 820 (Nev. 1996) (noting that had county district attorney's office fired district attorney in bad faith, the decision would not have entitled the defendant to immunity for discretionary acts).

Whether to refer the matter to the Attorney General for investigation in this matter was a discretionary choice. Plaintiffs have cited no authority that Defendant UCCSN was required to report the allegations to the Attorney General for criminal investigation rather than addressing the matter as an internal personnel issue. Further, whether to terminate an employee for alleged criminal conduct related to their employment is a matter within UCCSN's discretion. Because these were matters within UCCSN

9

employees' personal deliberation, decision, and judgment, UCCSN is entitled to discretionary immunity unless it acted in bad faith.

Plaintiffs contend UCCSN acted in bad faith because Plaintiffs had two lawsuits pending against UNLV at the time UCCSN referred the matter to the Attorney General and UCCSN referred the false allegations of stealing time in retaliation for the lawsuits. This is the only evidence of bad faith Plaintiffs offer other than their own personal beliefs that UCCSN was retaliating against them. However, Plaintiffs conceded their time sheets did not accurately reflect the time they worked. Thus, even if they were entitled to use flex time, their time records did not accurately reflect they were using flex time.

Additionally, even if Plaintiffs could establish bad faith through evidence of retaliation based on timing of a protected activity and the allegedly retaliatory firing, Plaintiffs have not shown a correlation in this case. The only evidence in the record describing the timing in the two suits establishes no correlation between protected activity and the allegedly retaliatory terminations. In one suit was pending in federal court, the Court granted summary judgment in favor of Defendant in November 2001 and Plaintiffs filed an appeal in December 2001. That is seven months before the July 2002 terminations. The other suit ended favorably for Defendant as well when an arbitrator issued an award in UCCSN's favor in June 2002. Although this is close in time to the firings, the arbitrator found in favor of UCCSN, not Plaintiffs. (Answer, Exs. 4 & 5.)

In sum, there is no evidence in the record of bad faith. To the contrary, the evidence in the record suggests only good faith conduct. First, Defendant referred the charges to the Attorney General for investigation before it took action to terminate Plaintiffs. Second, it did not fire Plaintiffs until after this independent entity completed its investigation and filed criminal charges against Plaintiffs. Third, two separate, independent proceedings determined there was a basis for the charges. The state hearing officer found the terminations substantiated. At Plaintiffs' preliminary hearing, Plaintiffs were bound

over for trial, indicating sufficient evidence supported the charges to take the matter to trial. There is no evidence in the record that either Murray or Elique, the two state officers who acted to terminate Plaintiffs in this case, acted with any bad faith. Accordingly, UCCSN is entitled to discretionary immunity on all counts.

### C. Intentional Infliction of Emotional Distress

To establish a cause of action for intentional infliction of emotional distress, a plaintiff must prove: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." Olivero v. Lowe, 995 P.2d 1023, 1025 (Nev. 2000). Extreme and outrageous conduct is that which is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." Maduike v. Agency Rent-A-Car, 953 P.2d 24, 26 (Nev. 1998) (quotation omitted).

Defendant's act of terminating Plaintiffs for falsifying time records is not outrageous conduct. Plaintiffs admit they did not accurately reflect their time worked on their time sheets. Additionally, Defendants did not terminate Plaintiffs until after the Attorney General completed its investigation and filed criminal charges against Plaintiffs. Two independent hearings have determined the charges had a reasonable basis. Accordingly, no reasonable jury could find UCCSN's conduct was outrageous and Defendant is entitled to summary judgment on Plaintiffs' intentional infliction of emotional distress claims.

### D. Negligent Infliction of Emotional Distress

The tort of negligent infliction of emotional distress historically compensated a bystander for suffering serious emotional distress resulting in physical symptoms caused by apprehending the death or serious injury of a loved one due to the defendant's negligence. Chowdhry v. NLVH, Inc., 851 P.2d 459, 462 (Nev. 1993). Nevada has extended negligent infliction of emotional distress claims where the defendant committed the negligent act

directly against the plaintiff.  Id.  Where the plaintiff's emotional distress damages "are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented." Olivero v. Lowe, 995 P.2d 1023, 1026 (Nev. 2000).

No evidence in the record suggests Plaintiffs experienced any sort of physical impact from Defendant's conduct.  In response to the original motion, Plaintiffs argued Defendant owed a general duty of care not to raise unsupported allegations against Plaintiffs, but did not address Defendant's physical impact argument nor did Plaintiffs argue they suffered severe emotional distress causing physical injury or illness.  In response to the renewed motion for summary judgment, Plaintiffs argue they have suffered enormous personal stress, although they admit they did not disclose their medical care providers. Plaintiffs have presented no evidence of either physical impact or serious emotional distress causing physical injury.

**E. Negligent Supervision**

Defendant's original motion argued a negligent supervision claim requires a threat of physical harm, for example where an employer fails to conduct a background check on a potentially violent employee.  Defendant argued no such threat of physical harm is at issue in this case. In the new motion, Defendant repeats that argument and adds an argument that even if negligent supervision involves a duty to exercise reasonable care in supervising an employee, UCCSN did so here because neither Elique nor Murray filed false accusations.  Plaintiffs respond UCCSN failed to supervise Elique and Murray who retaliated against Plaintiffs.

There is no evidence in the record supporting a finding of retaliation by Elique or Murray.  Elique and Murray forwarded allegations of misconduct to the Attorney General's office for independent investigation before terminating Plaintiffs.  Although Plaintiffs

12

contend Elique and Murray retaliated by making false allegations against Plaintiffs, both the state hearing officer and Plaintiffs' preliminary hearing found the charges had a reasonable basis.  There is no record evidence showing a correlation between Plaintiffs' filing of the lawsuits and any retaliatory conduct, as discussed below.  Accordingly, no reasonable jury could find negligent supervision and Defendant is entitled to judgment as a matter of law.

### F. Retaliation

On this claim, both parties use an analysis centered around whether Plaintiffs, as public employees, spoke out on a matter of public concern that outweighed UCCSN's interests.  Defendant argues alleged retaliation for filing a lawsuit is insufficient because Plaintiffs were public employees.  Rather, Plaintiffs have to show they spoke out on a matter of public concern.  Defendant argues nothing in the Complaint establishes Plaintiffs' suits involved matters of public concern.  Further, Defendant argues that even if Plaintiffs' suits involved matters of public concern, Plaintiffs' interests do not outweigh Defendant's interests in keeping only honest police officers on the payroll.  Defendant argues that because Plaintiffs falsified time records, their credibility in all future prosecutions would be suspect and therefore UCCSN's law enforcement on campus would be undermined. Plaintiffs respond they engaged in protected activity, their suits involved a matter of public concern because they involved treatment of public employees, and their rights to pursue redress in the courts outweighs UCCSN's interests.

Federal law strikes a balance between a public employee's interests as a citizen in commenting upon matters of public concern and the state employer's interest in promoting the efficiency of the public services it performs through its employees.  Hyland v. Wonder, 972 F.2d 1129, 1137 (9th Cir. 1992) (citing Pickering v. Bd. of Educ., 391 U.S. 563 (1968)).  A state employer does not violate the First Amendment to the United States Constitution for terminating an employee for the employee's speech unless the speech addresses a matter of public concern.  Id.  Speech focused solely on internal policy and

personnel grievances does not implicate the First Amendment. Id. "Determining whether speech involves a matter of public concern entails an inquiry into the content, form, and context of a given statement, as revealed by the whole record." Id. (quotation omitted). The first amendment protects the employee's entire speech even if only part of the speech addresses an issue of public concern. Id.

Plaintiffs offer no evidence as to the content of their other lawsuits. Absent evidentiary proof their prior suits concerned matters of public concern, Defendant is entitled to summary judgment. Further, Plaintiffs have presented no evidence UCCSN terminated them because they filed suit. Rather, the evidence in the record shows UCCSN did not terminate Plaintiffs until the Attorney General completed its investigation and filed criminal charges against Plaintiffs. Plaintiffs have shown no correlation between events in the lawsuits and their terminations. Therefore, Defendants are entitled to summary judgment on Plaintiffs' claim of retaliation as well.

**IV.    CONCLUSION**

IT IS ORDERED that Defendant's Motion for Summary Judgment (Doc. #76) is granted and Judgment is hereby entered in favor of Defendants and against Plaintiffs with respect to all remaining claims.

DATED: October 11, 2006

_____
PHILIP M. PRO
Chief United States District Judge